**James M. GWIN**
v.
**The UNITED STATES.**
No. 202–55.

United States Court of Claims.
Jan. 31, 1956.

Thomas H. King, Washington, D. C., for plaintiff. Louis B. Arnold and Dale L. Jernberg, Washington, D. C., were on the brief.

Francis P. Borden, Jr., El Dorado, Ark., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff sues for the full pay and allowances of a lieutenant colonel in the Army for two short periods, one in 1952 and one in 1953, and for retired pay for physical disability from April 1, 1953 to the date of judgment.

The plaintiff first became a member of the Officers Reserve Corps of the Army of the United States in 1931. Except for one short interval in 1936, he served continuously either in the National Guard or the Reserve Corps until his commission as a Reserve officer was terminated by reason of physical disability on March 8, 1953.

On June 23, 1952, the plaintiff was ordered to a 2-week tour of active duty, to extend from August 3 to August 17. On July 31, pursuant to orders, he commenced his tour of duty as the Advance Detail for the 354th Military Government Area Headquarters. He was assigned to do this preparatory work in only three days. The preceding year two officers had been given a week to do it. The weather was hot, the plaintiff had to work long hours, and sometimes did not get his meals regularly. On the night of August 2 he was troubled by a cough and a slight pain high in his chest. He worked hard on August 3, missed his lunch, and had dinner late. He worked in his barracks until 1 a. m. on August 4. He suffered extreme pain, went to the hospital and returned to his barracks when the pain subsided.

At about 3 a. m. on August 4 he went again to the hospital where he was admitted as a patient with a diagnosis of arteriosclerotic heart disease, anteroseptal myocardial infarction and anginal syndrome. He remained in the hospital at Fort Meade, Maryland, until September 8, 1952, when he was released from the hospital and ordered to proceed to his home, he being said to have "attained maximum hospital benefits."

On September 8, 1952, a lieutenant colonel of the Regular Army pursuant to an order of the Commanding Officer of Fort Meade, made an investigation and report, the report stating that the plaintiff's heart attack was brought on by overwork and strain, and was in line of duty.

On September 10 the plaintiff requested further medical assistance from his military district. After an intermediate refusal, he was admitted as a patient at Walter Reed Hospital on October 23. On February 16, 1953, while still in the hospital, he appeared before an Army Medical Board, which diagnosed his condition as:

"(1) arteriosclerotic heart disease, functional capacity, Class III, *date of origin 1952;* and

"(2) infarction of myocardium, moderate, due to arteriosclerotic

coronary thrombosis, *date of origin 2 Aug. 52.*"

The Board found that each incapacity was total and permanent and that the plaintiff was not physically fit for military service. It recommended that he appear before a Physical Evaluation Board.

On February 20, 1953, the Surgeon General of the Army ruled that the plaintiff's condition was a disease and that, since plaintiff was serving on a tour of duty of less than 30 days, he was not entitled to appear before a Physical Evaluation Board. On March 4, 1953, the Judge Advocate General of the Army ruled that the plaintiff could not qualify for disability benefits under section 402 (a) or (b) of the Career Compensation Act of 1949, 63 Stat. 816, 37 U.S.C.A. § 272(a) and (b), because his disability was not incurred while on extended active duty; and that he could not qualify under section 402(c) of that Act, because his disability was not the result of an injury. The plaintiff's case was never considered by a Physical Evaluation Board.

On June 17, 1953, the plaintiff applied to the Army Board for the Correction of Military Records, asking that his records be corrected to show that he was relieved from active duty by reason of a physical disability, and that he be placed on the Disability Retirement List. The plaintiff's application was at first denied, but was later reconsidered, and he was, on January 19, 1955, given a hearing before the Board for the Correction of Military Records. On January 25 the Board issued its decision, concurring in the rulings of the Surgeon General and the Judge Advocate General stated above, and denying the plaintiff's application for the correction of his records. The Assistant Secretary of the Army on March 10, 1955, in a memorandum for the Adjutant General of the Army, approved the Board's action.

The plaintiff asserts that his present condition is a result of an *injury* to his heart caused by unusual and excessive strain which he underwent in the performance of his duties; that the official actions denying him relief were contrary to the intent and the letter of the applicable statute.

The question is one of statutory interpretation. If the plaintiff should have been given disability retirement pay, it was because his case came within section 402(c) of the Career Compensation Act of 1949, 63 Stat. 817, 37 U.S.C.A. § 272(c), which says:

"Upon a determination by the Secretary concerned (1) that a member of the uniformed services, other than those members covered in subsections (a) and (b) of this section, [Members of Regular Components of Uniformed Services entitled to receive basic pay or Members of a Reserve Component entitled to receive basic pay who have been called or ordered to extended active duty for a period in excess of thirty (30) days], is unfit to perform the duties of his office, rank, grade, or rating by reason of physical disability resulting from an injury; * * * the name of such member shall be placed upon the temporary disability retired list of his service by the Secretary concerned and such member shall be entitled to receive disability retirement pay as prescribed in subsection (d) of this section: * * *."

This subsection was intended to cover reserve personnel who were called to active duty for periods of 30 days or less, as was the plaintiff. The first step in the interpretation of the statute is to see it in its context. Subsections (a) and (b) of section 402 state the circumstances under which persons called to active duty for periods in excess of 30 days become entitled to disability retirement pay. Subsection (a) covers those who have been called to such extended service, though they may not have had any other period of active service. Subsection (b) covers those who have completed at least eight years of active service, and provides for disability pay even though the disability is not an in-

cident of service. But both subsections (a) and (b) refer only to "physical disability," while subsection (c) says "physical disability resulting from an injury."

On the face of these passages from the statute, it is apparent that Congress intended to treat those persons covered by (c) differently from those covered by (a) and (b). If it did not, there was no reason to write (c) nor to limit the coverage of (a) and (b) to persons called for extended active service.

In common parlance, a heart attack is not spoken of as an injury but as a disease. If Congress, which obviously did intend to make some distinction, did not intend to make the distinction which is made in common speech, we are at a loss to imagine where they did intend to draw the line. Plaintiff's counsel seems to urge that there is something special about the kind of heart attack which the plaintiff suffered which makes it more like a collision than a disease; that some substance breaks loose from a blood vessel and is carried to another place where it obstructs the passage of blood. Of the plaintiff's two medical witnesses before the Board for the Correction of Military Records, one testified, and the other one apparently agreed with him, that only in the rarest cases does such a thing happen; that in nearly all cases the swelling of the walls of the blood vessel is what shuts off the flow of blood.

We see little more basis for regarding a heart attack as an injury than for similarly regarding pneumonia, typhoid or yellow fever, smallpox or any other ailment which a soldier might catch, or which, if he already had it, might disable him while on a short tour

of duty. In each of such illnesses there are physical changes in the body such as congestions and swellings, comparable to those which cause a heart attack.

The legislative history, which is extensive,[1] shows that Congress was not ready to allow disability retirement to persons who were disabled by disease while on short tours of duty, and that section 402(c) was worded as it was, for that reason. However beneficent it might be for us to construe the statute otherwise, it would be a usurpation of the functions of Congress.

The plaintiff's petition will be dismissed.

It is so ordered.

1. See Hearings before a Subcommittee of the Committee on Armed Services, House of Representatives, 81st Cong., 1st Sess. (1949) on H. R. 2553, pp. 2015–2038. H. R. 2553, redesignated as H. R. 5007, 81st Cong., 1st Sess. (1949) was subsequently enacted as the Career Compensation Act of 1949. See also Hearings before a Subcommittee of the Committee on Armed Services, United States

Senate, 81st Cong., 1st Sess. (1949) on S. 213 at pages 3, 10 and 28; Hearings before the Committee on Armed Services, United States Senate, 81st Cong., 1st Sess. (1949) on H. R. 5007, pp. 302, 303. And see Senate Report No. 733, Calendar No. 74, July 20, 1949, p. 23; Senate Report No. 95, 81st Cong., 1st Sess. (1949) p. 3.