**John C. CANDELARIA**

v.

**The UNITED STATES.**

No. 62–82C.

United States Claims Court.

April 26, 1984.

Richard P. Fox, Los Angeles, Cal., for plaintiff.

Louis R. Davis, Washington, D.C., with whom was Acting Asst. Atty. Gen., Rich-

ard K. Willard, Washington, D.C., for defendant.

## OPINION

YOCK, Judge.

In this military pay case, plaintiff seeks a determination that he is entitled to disability retirement pay as a medical disability retiree of the United States Air Force Reserve. In the alternative, plaintiff requests that this Court order defendant to convene a Physical Examination Board to consider whether plaintiff is entitled to receive disability retirement pay as a physical disability retiree of the Air Force Reserve.

Plaintiff moved for partial summary judgment and defendant thereafter filed its cross-motion for summary judgment. For the reasons discussed herein, defendant's cross-motion for summary judgment is granted, plaintiff's motion for partial summary judgment is denied, and the complaint is to be dismissed.

### Background Facts

During 1976, plaintiff, a noncommissioned officer in the United States Air Force Reserve, was assigned to nonactive duty status in a Reserve unit stationed at Norton Air Force Base, California. As a member of the Reserve, plaintiff participated in frequent training flights as a Loadmaster and thereby was entitled to earn reserve retirement points and pay when performing active duty, active duty for training and inactive duty training.

In August 1976, plaintiff was assigned to a tour of active duty for training for the period of August 15, 1976 through August 21, 1976, during which time he participated in a training flight to Australia. On August 22, 1976, following his return to California, plaintiff experienced "flu-like symptoms" and reported to the medical clinic at Norton AFB. Plaintiff was not grounded and he subsequently participated in several tours of inactive duty for training between August 22, 1976 and September 9, 1976. Plaintiff again suffered "flu-like symp-

toms" on September 9, 1976, and, after reporting to the March AFB Regional Hospital in California, was diagnosed as suffering from a myocardial infarction. Plaintiff was admitted to the base hospital as a "civilian emergency." Thereafter, on September 16, 1976, plaintiff suffered a cardiac arrest and subsequently was transferred to the Riverside General Hospital in Riverside, California. Following his discharge from the Riverside General Hospital on September 26, 1976, plaintiff was treated on an outpatient basis. On October 16, 1976, plaintiff began experiencing shortness of breath and was readmitted to the Riverside General Hospital on October 21, 1976. Thereafter, plaintiff was transferred to the Loma Linda University Medical Center, where he was diagnosed as suffering from acute mitral insufficiency and arteriosclerotic heart disease resulting in total occlusion of his right coronary artery. Plaintiff subsequently underwent emergency corrective coronary bypass surgery. Following the symptomatic onset of plaintiff's arteriosclerotic heart disease in September 1976, plaintiff engaged in no further duty assignments as a member of the Air Force Reserve.

On January 28, 1978, plaintiff was examined at the Medical Facility at Norton AFB, California. Thereafter, on April 17, 1978, the Air Force Reserve Personnel Center notified plaintiff by letter that the Air Force had initiated steps to terminate plaintiff's enlistment as a member of the Air Force Reserve. An attachment to the letter, entitled "Statement of Reasons," indicated that "Competent military medical authority has determined that you are permanently medically disqualified for worldwide active military service." The letter informed plaintiff that an active duty judge advocate had been designated as plaintiff's counsel and would represent plaintiff if he so desired. In addition, the letter indicated plaintiff was free to seek representation by other qualified military counsel or, if he so desired, by civilian counsel at his own expense.

The letter also provided:

3. The following are options available to you. Please select one of them.

a. *Application for Discharge:* You may make an application for discharge in lieu of further action. * * *

b. *Application for Transfer to the Retired Reserve Section:* * * *

c. *Administrative Discharge Board:* You may select the option of having your case heard by an administrative discharge board composed of three officers. You may appear before this board in person, with or without counsel, or you may have counsel appear for you. At the conclusion of the hearing, the board will recommend that you be either retained in the reserve or be honorably discharged. * * °*

With regard to the latter option, plaintiff was informed that "such a board has no authority to make medical determinations. Instead, such a board is limited to make a finding, and a recommendation consistent therewith, whether an official medical determination has, in fact, been made * * *. Such a board must insure that any and all medical evidence that is presented during the board hearing has been made and is evidenced by medical documents certified by the appropriate surgeon * * *."

After consultation with his doctor, who advised that for health reasons plaintiff should neither travel to nor appear before the Administrative Discharge Board, and with his assigned military counsel, plaintiff elected option b, "Application for Transfer to the Retired Reserve." Thereafter, plaintiff was transferred to the Retired Reserve with no disability benefits.

On March 24, 1980, at the request of his civilian counsel, plaintiff underwent a medical examination at March AFB in California. In a report dated April 7, 1980, the examining physician concluded that "[t]he patient's profile is P-4 [unfit for military service]. He is significantly disabled." On April 15, 1980, a Medical Board convened at the Regional Hospital at March AFB to review plaintiff's medical status. Contained in the Board's report was the notation "Refer to Physical Evaluation Board (Not qualified for Physical Evaluation Board per AFR 35–4)."

Thereafter, on April 22, 1980, plaintiff's civilian counsel wrote the Air Force Reserve Personnel Center asserting on plaintiff's behalf that any individual member of the armed forces has a statutory right to a full and fair hearing prior to a valid separation or retirement for disability. On May 5, 1980, the Air Force Reserve Personnel Center responded to counsel's letter, stating that under applicable Air Force regulations, plaintiff was not eligible for disability processing.

In June of 1980, plaintiff applied to the Air Force Board for Correction of Military Records (Correction Board or AFBCMR), requesting that his records be corrected to reflect his retirement by reason of a service-connected physical disability. In the alternative, plaintiff sought a determination by the AFBCMR that he was entitled to have his case considered by a Physical Examination Board (PEB), together with an order referring him to a PEB for further evaluation.

In correspondence with the AFBCMR, plaintiff's counsel again asserted that under the provisions of section 1214 of Title 10 of the United States Code plaintiff was entitled to a full and fair hearing prior to being retired from military service for physical disability. The Administrative Discharge Board which the Air Force Reserve Personnel Center offered plaintiff in its letter of April 18, 1978 did not meet the statutory requirements of 10 U.S.C. § 1214, counsel asserted, because that Board was not authorized to evaluate whether plaintiff's disability was service-related and whether plaintiff was entitled to disability compensation. Counsel observed, however, that only a PEB would meet the full and fair hearing requirements of section 1214.

Following an initial review, the Acting Executive Secretary of the AFBCMR forwarded to plaintiff's counsel an advisory opinion recommending that plaintiff's application be denied. Plaintiff, the advisory opinion stated, was disqualified from mili-

tary service by reason of arteriosclerotic heart disease and myocardial infarction. Further, plaintiff transferred to the Retired Reserves at his own request. Under the provisions of AFM 35–4, chapter 8, plaintiff was not entitled to disability processing because his disability was the result of disease and was not an injury incurred while plaintiff served on active duty.[1] Plaintiff's counsel responded that the primary issue in plaintiff's case was legal rather than medical. Counsel asserted that the law mandates that plaintiff receive a full and fair hearing to determine whether his heart condition and subsequent myocardial infarction was or was not the result of an injury incurred while plaintiff was on active duty. In counsel's view, a PEB would be the proper body to make such an evaluation and determination and would, therefore, satisfy the full and fair hearing requirement of 10 U.S.C. § 1214.

Thereafter, the Correction Board referred plaintiff's case to the office of the Judge Advocate General for an advisory opinion regarding plaintiff's entitlement to a hearing before a PEB. The Judge Advocate's office responded that chapter 61 of Title 10 of the United States Code does not provide military personnel with an unqualified right to have disability retirement claims considered by a PEB. Rather, sections 1201 through 1206 of Title 10 establish specific categories of persons eligible for disability retirement from military service. Plaintiff, the Judge Advocate's office concluded, did not fall within any of the categories of sections 1201–1206 and therefore enjoyed no substantive entitlement to a full and fair hearing under the Air Force regulations which implement 10 U.S.C. § 1214.

Following extensive review of plaintiff's application, during which time the Board solicited comments, suggestions and other evidence from plaintiff and his counsel and during which time counsel continued to assert plaintiff's entitlement to a hearing be-

fore a PEB, the Correction Board denied plaintiff's application. In its report dated October 13, 1982, the AFBCMR concluded:

> Insufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice. We agree with the recommendations of the appropriate offices of the Air Staff and adopt their rationale as the basis for our conclusion that the applicant has not been the victim of either an error or injustice warranting the requested relief.

After filing his application with the AFBCMR but before that Board rendered its decision, plaintiff initiated this action. On April 29, 1982, this Court allowed defendant's motion to suspend proceedings pending the decision of the AFBCMR. On November 10, 1982, following the October 13, 1982, decision of the Correction Board, this Court allowed defendant's motion to dissolve suspension of proceedings. Thereafter, on March 14, 1983, plaintiff filed his motion for partial summary judgment, and defendant filed its cross-motion for summary judgment. The parties have waived oral argument.

*Discussion*

Before this Court, plaintiff contends that the decision of the Correction Board denying him a hearing before a Physical Evaluation Board was contrary to law. Plaintiff asserts that the AFBCMR denied him his statutory right, under 10 U.S.C. § 1214, to a full and fair hearing at which plaintiff could appear personally to present evidence that his disability was the result of a service-related injury and that he therefore was entitled to receive disability compensation. Plaintiff's petition (now complaint) seeks a determination by this Court that he is entitled to disability retirement benefits or, alternatively, an order that the defendant convene a PEB to evaluate plaintiff's claim to disability compensation. Plaintiff's motion for partial summary judgment seeks only the latter relief. While plaintiff

---

1. The provisions of AFM 35–4 implement chapter 61 of Title 10 of the United States Code and prescribe procedures for retiring, discharging or retaining members of the armed forces who are unfit to perform their duties due to physical disability.

makes no uncategorical assertion that his disability is in fact the result of a service-related injury, he urges this Court that a PEB is the appropriate body to make such a determination.

Defendant contends that the decision of the AFBCMR is correct as a matter of law and must be affirmed. In support of its position, defendant notes that plaintiff, a member of the Air Force Reserve, was on duty for a period of thirty days or less when his heart condition became symptomatic. Defendant asserts that plaintiff enjoys no substantive entitlement to disability retirement benefits and therefore plaintiff has no statutory right to a "full and fair hearing." Further, defendant argues that a Correction Board is the functional equivalent of a PEB, in that plaintiff had an opportunity to present all relevant facts to the Correction Board. Because plaintiff's claim was fairly considered by the AFBCMR, plaintiff may not now claim that he is entitled to a further full and fair hearing. Finally, defendant notes that the equitable powers of this Court are limited and orders in the nature of mandamus may issue only in instances where such relief is incidental to an award of money damages. Accordingly, defendant argues that this Court lacks jurisdiction to grant plaintiff the alternative relief which he requests in his motion for summary judgment—an order remanding the case to a PEB for further medical evaluation.

### A. The Standard of Review

■ In the context of a motion for summary judgment, the court must, as a threshold matter, determine whether a genuine issue of material fact exists. *Process and Storage Vessels, Inc. v. Tank Service, Inc.*, 541 F.Supp. 725, 731 (D.Del.1982); *Garcia v. United States*, 123 Ct.Cl. 722, 732, 108 F.Supp. 608, 613 (1952). Moreover, any doubts, inferences or issues of credibility must be resolved against the moving party. *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972). In the present case, however, both parties have moved for summary judgment and both parties seemingly are in agreement that the material facts are not in dispute. This Court agrees and, therefore, the motions for summary judgment may be considered.

The focus of this Court in considering plaintiff's motion and defendant's cross-motion for summary judgment is the decision of the Correction Board. In past decisions this Court's predecessor, the United States Court of Claims, repeatedly held that it would not overturn a decision of a Correction Board without cogent, clearly convincing proof that the decision was arbitrary, capricious or unlawful. *E.g., Doyle v. United States*, 220 Ct.Cl. 285, 311, 599 F.2d 984, 1000 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Sanders v. United States*, 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979); *Dorl v. United States*, 200 Ct.Cl. 626, 633, *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973). The Court noted in *Sanders:*

> Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

*Sanders v. United States, supra*, 219 Ct.Cl. at 298, 594 F.2d at 811.

### B. Review of the Decision of the Correction Board

In the present case, plaintiff has made no allegation that the decision of the Correction Board was arbitrary, capricious or unsupported by substantial evidence. Rather, plaintiff asserts the AFBCMR acted contrary to law in denying him a full and fair hearing before a Physical Examination Board. Section 1214 of Title 10 of the United States Code provides: "No member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it." 10

U.S.C. § 1214 (1976). Plaintiff believes that the language of section 1214 clearly applies to him and that he should have been granted a hearing before a PEB for consideration of his claim to disability compensation.

■ Although it is an established principle of statutory construction that the "starting point" for the interpretation of a statute is the statutory language itself, *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982), it also is well established that each section or part of a particular statute must be construed in relation to each other section or part "so as to produce a harmonious whole." 2A Sutherland, *Statutes and Statutory Construction* § 46.05, at 56 (C. Sands rev. ed. 1973); *see also Erlenbaugh v. United States,* 409 U.S. 239, 244, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972). Section 1214, therefore, must not be considered in isolation, but must be examined and construed in relation to the other sections contained in chapter 61 of Title 10 of the United States Code.

Chapter 61, entitled "Retirement or Separation for Physical Disability," sets forth in sections 1201 through 1206 various categories of military personnel who may be retired by reason of disability. Plaintiff, a member of the Air Force Reserve, was not called or ordered to duty for a period of more than thirty days when his arteriosclerotic heart disease became symptomatic in August and September of 1976. Under the provisions of chapter 61, therefore, the only conceivable authorization for plaintiff to be considered for disability processing is found in section 1204. Captioned "Members on active duty for 30 days or less; disability from injury: retirement," section 1204 provides in part:

Upon a determination by the Secretary concerned that a member of the armed forces not covered by section 1201, 1202, or 1203 of this title is unfit to perform the duties of his office, grade, rank, or rating because of physical disability resulting from an injury, the Secretary may retire the member with retired pay

computed under section 1401 of this title, if the Secretary also determines that—

(1) based upon accepted medical principles, the disability is of a permanent nature;

(2) the disability is the proximate result of performing active duty or inactive-duty training;

* * * and

(4) either—

(A) the member has at least 20 years of service computed under section 1208 of this title; or

(B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans' Administration at the time of the determination.

■ The provisions of 10 U.S.C. § 1204 appeared originally as part of the Career Compensation Act of 1949. *See* Pub.L. No. 81–351, 63 Stat. 802, 816 (1949). The legislative history of the Act supports the view that Congress clearly did not intend that military personnel on short tours of duty be entitled to disability pay benefits when they become disabled by disease. *See* S.Rep. No. 733, 81st Cong., 1st Sess., *reprinted in* 1949 U.S.Code Cong. & Adm. News 2089, 2103; *see also Stephens v. United States,* 174 Ct.Cl. 365, 375–76, 358 F.2d 951, 956 (1966); *Gwin v. United States,* 133 Ct.Cl. 749, 753 & n. 1, 137 F.Supp. 737, 740 & n. 1 (1956). Section 1204, therefore, unambiguously requires that a member of the armed forces called to duty for thirty days or less must be permanently disabled as a result of a service-related *injury.* Conspicuous in its absence from the language of section 1204 is any reference to disability arising from *disease.* Thus, for plaintiff to possess a statutory right to disability retirement benefits under chapter 61, his disability must be the result of a service-related injury.

The Court of Claims, in considering the question of entitlement to disability benefits under 10 U.S.C. § 1204, has consistently held that a myocardial infarction is not an injury. Rather, myocardial infarction, the court determined, is the result of an

ongoing, slowly-developing disease process. *See, e.g., Stephens v. United States, supra,* 174 Ct.Cl. at 374, 358 F.2d at 955–56; *Gwin v. United States, supra,* 133 Ct.Cl. at 751–53, 137 F.Supp. at 739–40. In *Stephens,* the court rejected the plaintiff's claim that his myocardial infarction was an injury and that he therefore fell within the scope of 10 U.S.C. § 1204. The court observed: "In *Gwin v. United States,* * * * we held as a matter of common parlance and of statutory interpretation that a myocardial infarction is a 'disease,' and not in and of itself an 'injury' within the purview of 10 U.S.C. § 1204." *Stephens v. United States, supra,* 174 Ct.Cl. at 374, 358 F.2d at 956.

Plaintiff does not dispute the applicability of 10 U.S.C. § 1204 to his claim. Nor does plaintiff dispute that a myocardial infarction generally is considered to be the result of an ongoing, developing disease process. Plaintiff argues, however, that he is absolutely entitled by law to a "full and fair hearing" before a PEB to determine whether the myocardial infarction which he suffered in September 1976 was the result of a service-related injury.

This Court, however, finds that the plaintiffs argument is erroneous as a matter of law. Plaintiff is not entitled to a hearing before a PEB as a matter of right. In *Abatemarco v. United States,* 226 Ct.Cl. 708 (1981), the plaintiff advanced a claim similar to that urged by plaintiff in the present case. In *Abatemarco,* the plaintiff, a member of the Army Reserve, claimed he was improperly denied disability retirement because he was not afforded a "full and fair hearing" under 10 U.S.C. § 1214. Rejecting the argument, the court observed:

A sufficient bar to [plaintiff's] claim is that plaintiff was not substantively entitled to disability retirement in 1979. * * The only possible authorization for granting him disability retirement pay * * * would be 10 U.S.C. § 1204 * * * which permits disability retirement pay * * * for armed forces members disabled because of *injury* which is the proximate result of performing active duty or inactive-duty training. Plaintiff was not, however, transferred * * * because of any *injury* * * *. He was, instead, transferred because he had migrane headaches—a defect not within the limited statutory authorization * * * under 10 U.S.C. § 1204 * * *.

*Id.* at 710–11 (emphasis in original).

 Under accepted principles of statutory construction, the provisions of 10 U.S.C. § 1214 which call for a "full and fair hearing" must be construed together with the remaining sections of chapter 61 of Title 10 of the United States Code. Thus, for plaintiff to possess a right to a full and fair hearing, his disability must be permanent and must be the result of a service-related injury. *See* 10 U.S.C. § 1204 (1976). Controlling precedent of the Court of Claims, however, has established that myocardial infarction is the result of a slowly-developing disease process and is not in and of itself an injury. In the absence of independent evidence that while serving on a tour of duty plaintiff suffered an independent blow or trauma which acted as a precipitating cause of his myocardial infarction, plaintiff does not fall within the meaning of section 1204 of Title 10 of the United States Code. *See Stephens v. United States, supra,* 174 Ct.Cl. at 375, 358 F.2d at 956. *See generally Rae v. United States,* 159 Ct.Cl. 160 (1962). Plaintiff therefore enjoys no substantive entitlement to a full and fair hearing by a PEB and defendant never was under a statutory obligation to refer plaintiff to a PEB. Thus, the AFBCMR decision to this effect should not be overturned as it is not arbitrary, capricious or contrary to law.

 In addition, plaintiff has made no allegation that the Correction Board acted arbitrarily and capriciously by disregarding evidence in the record before it. Plaintiff does assert, however, that the Correction Board is under a duty to obtain further information if it appears that the facts have not been fully and fairly disclosed. *See* 32 C.F.R. § 865.12(a)(2) (1982). Although the Court agrees with the plain-

tiff's assertion as to the Board's duty to obtain and review all evidence relevant to a just and proper determination of a given claimant's case, that agreement does not help the plaintiff's cause in this case. The Correction Board determined that all the facts in the case had been fully and fairly disclosed. Further, the Board pointedly requested the plaintiff to come forward with any other new or relevant evidence not already in the record. The plaintiff, however, chose not to bring forward any new or relevant evidence whatsoever to show to the Correction Board that his myocardial infarction was in fact a service-related injury instead of a disease. That is unacceptable. The plaintiff cannot demand another forum be made available to him before he will present his evidence. The Correction Board was the forum plaintiff was in, and in which he had the burden to present evidence to support his disability claim. *See Friedman v. United States,* 159 Ct.Cl. 1, 24–25, 310 F.2d 381, 396–97 (1962), *cert. denied sub nom. Lipp v. United States,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). If the AFBCMR had failed to consider evidence which would tend to indicate that plaintiff's myocardial infarction was precipitated by an injury, and failed to investigate that evidence fully, this Court would then be empowered to remand plaintiff's case for further findings in light of plaintiff's medical history. *Cf. Istivan v. United States,* 231 Ct.Cl. 671, 677–79, 689 F.2d 1034, 1038–39 (1982).

There is no convincing evidence to be found in the record before this Court which would suggest that plaintiff's myocardial infarction and subsequent disability was the result of anything but a manifestation of an ongoing condition of arteriosclerotic heart disease. Following a seven-day tour of active duty in August 1978, plaintiff complained of "flu-like symptoms." The Flight Medical Station at Norton AFB did not ground plaintiff, however, until he again reported to the station with a similar complaint on September 9, 1978. The Medical Officer's report from September 9 indicates only a diagnosis of "Flulike Syndrome." Similarly, none of the reports of

medical examination and evaluation submitted to this Court give any indication that plaintiff suffered a blow or injury while on duty which could have been a producing cause of his myocardial infarction.

■ The Court of Claims stated previously in *Stephens* that "this court will not substitute its judgment for that of the armed services in determining general fitness for military duty." *Stephens v. United States, supra,* 174 Ct.Cl. at 372, 358 F.2d at 954. This Court will not do so here. Where plaintiff has utterly failed to set forth any facts which would indicate that his disability was the result of a service-related injury, and where the Correction Board fully considered all the evidence presented to it, the Court clearly cannot hold that the Correction Board acted arbitrarily, capriciously against the weight of substantial evidence, or contrary to law when it refused to refer plaintiff to a PEB for further evaluation.

Accordingly, the plaintiff is not entitled to the relief requested and the complaint is to be dismissed.

## CONCLUSION

For the reasons discussed, plaintiff's partial motion for summary judgment is denied, the defendant's cross-motion for summary judgment is granted, and the complaint is to be dismissed.