**Felix E. PEREZ, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–680C.

United States Court of Federal Claims.

May 5, 1997.

Raymond C. McRorie, Fayetteville, NC, for plaintiff.

Martin F. Hockey, Jr., Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen, and James M. Kinsella, of the U.S. Department of Justice, and Lieutenant Colonel Nolon J. Benson, Jr. and Captain Flora D. Darpino, of the U.S. Department of the Army, Office of the Judge Advocate General, for defendant.

## OPINION

ROBINSON, Judge:

This military pay action is before the court on defendant's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(4) of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiff, Felix E. Perez, seeks correction of his military records to reflect retirement in the grade of colonel, back pay, and allowances since the date of his retirement, April 1, 1991. Defendant's motion to dismiss was filed on March 22, 1994, and the Administrative Record ("*Admin.R.*") was filed March 24, 1994. Plaintiff filed its response in opposition to defendant's motion on April 11, 1994, to which defendant replied on April 25, 1994. Oral arguments were heard on January 12, 1995, in the National Courts Building, Washington, D.C. This case was stayed for 25 months pending the administrative decision by the Army Board for Correction of Military Records ("ABCMR") on plaintiff's April 13, 1995 petition for reconsideration and was reactivated by this court's Order of February 23, 1997. For the reasons set forth below, defendant's motion is hereby granted.

## Background

Plaintiff, formerly a career, active duty United States Army ("Regular Army" or "USRA") officer, retired in the grade of lieutenant colonel on March 31, 1991, after 28 years of military service. Mr. Perez entered active duty on March 11, 1963, as a second lieutenant. Throughout his career, Mr. Per-

ez regularly received promotions, eventually attaining the rank of lieutenant colonel on April 2, 1976.

Prior to September 1981, military officers on active duty were able to maintain a dual status; active duty Army officers could concurrently maintain commissions in the Regular Army as well as the United States Army Reserves ("Army Reserves" or "USAR"). The Regular Army and Army Reserves maintained separate promotion selection systems enabling an officer to hold different ranks in the two systems. While in active duty, plaintiff also held a commission in the Army Reserves and was simultaneously promoted through the ranks of the Reserves. In June 1981, Mr. Perez was selected for the rank of colonel in the USAR, promoted to that position on September 30, 1981, and assigned a November 28, 1981 date of rank. In March 1982, plaintiff was integrated into the Regular Army as a lieutenant colonel with an April 3, 1976 date of rank.

On December 12, 1980, Congress enacted the Defense Officer Personnel Management Act ("DOPMA"), Pub.L. No. 96–513, 94 Stat. 2956 (codified as amended in scattered sections of 10 U.S.C.), which *inter alia* was intended to eliminate the dual status of military officers. *See generally* 10 U.S.C. §§ 521, 531–533, 601–646, 1251, 1370. Under DOPMA, officers were required either to retire in their Army Reserves grade after 20 years or to integrate into active duty in the Regular Army. *Id.*; H.R. REP. No. 96–1462, 96th Cong., 2d Sess. (1980), *reprinted in* 1980 U.S.C.C.A.N. 6333, 6355–56. Between the passage and the implementation of DOPMA, Congress passed the first Defense Officer Personnel Management Act Technical Corrections Act ("DOPMATCA" or "Technical Corrections Act") on July 10, 1981, making several changes to DOPMA. Pub.L. No. 97–22, 95 Stat. 124–138. Both DOPMA and DOPMATCA became effective on September 15, 1981. Among other provisions, the Technical Corrections Act contained a savings provision[1] for certain Army Reserves offi-

---

1. This type of provision is commonly referred to as a "grandfather" clause. It creates an exemption for eligible candidates as a result of conditions or qualifications existing prior to the enactment of the legislation or regulation at issue. *See* BLACK'S LAW DICTIONARY 629 (5th ed.1979).

cers enabling them to retire in the Army Reserves grade held on the date of implementation of DOPMA and DOPMATCA.

On June 16, 1981, the United States Army Military Personnel Center ("MILPERCEN") informed plaintiff that DOPMA had been enacted and would be implemented on September 15, 1981. The representative at MILPERCEN stated that the Secretary of the Army had approved the Regular Army force policy for field grade officers on the active duty list and informed plaintiff that he was eligible for Regular Army integration. By letter dated June 23, 1981, to the Commander of MILPERCEN, Mr. Perez stated that he was aware of the proposed legislation for Army Reserves officers and that he was unable to decide at that time whether to integrate into the Regular Army. Mr. Perez explained that he had been selected for promotion to colonel in the Army Reserves and was concerned what effect an integration into the Regular Army would have on his dual status and eligibility for retirement in the grade of colonel USAR. Plaintiff specifically questioned, "In the event I decide to accept integration into the regular Army, am I automatically declining my Reserve's 06 grade?" On July 10, 1981, Major James T. Cook responded to Mr. Perez and stated, "Legislation has passed—your [sic] grandfathered under DOPMA. Regular Army integration will not change your retirement status of 06." After receiving this advice, Mr. Perez accepted a commission in the Regular Army on January 25, 1982.

On April 23, 1990, Lieutenant Colonel Stephen F. McCarthy of the United States Army Personnel Command ("PERSCOM"), formerly MILPERCEN, notified Mr. Perez that he was approaching his mandatory retirement date.[2] Lieutenant Colonel McCarthy advised plaintiff that he would be placed on the retired list effective April 1, 1991, in the rank of lieutenant colonel. Plaintiff responded by stating that he was entitled to retire in the grade of colonel/USAR rather than lieutenant colonel/USRA and forwarded

a copy of the notification he had received from Major Cook of MILPERCEN.

Lieutenant Colonel McCarthy requested and received a review of Mr. Perez's case from the Office of the Judge Advocate General ("JAG"). JAG concluded that under DOPMA, Mr. Perez could not be retired in an Army Reserves rank because he no longer held an Army Reserves commission. On October 1, 1990, Lieutenant Colonel McCarthy forwarded this opinion to Mr. Perez and informed him that his retirement would be in the grade of lieutenant colonel, at which rank Mr. Perez was retired from the Regular Army on March 31, 1991.

On November 2, 1990, prior to his retirement, Mr. Perez applied to the ABCMR, requesting that he be retired in the rank of colonel. ABCMR requested a review and advisory opinion from PERSCOM, which in turn requested and received a legal review from JAG. Again, citing DOPMA, JAG stated that plaintiff could not be retired in the grade of colonel because he did not hold that rank at the time of his retirement. The fact that he had received erroneous advice from PERSCOM did not estop the Army from correctly applying the statutory law. On May 26, 1993, the ABCMR denied plaintiff's application for the correction of his records.

The ABCMR's stated rationale for denying plaintiff's application included: (1) the applicant was retired in the proper rank of lieutenant colonel, under the provisions of 10 U.S.C. §§ 1370, 3961 as supported by the JAG opinion; (2) it appeared that it was not the intent of Congress to allow former reserve commissioned officers on the active duty list to retire in the higher Army Reserves rank they may have held after they had integrated into the Regular Army, as clarified by the Technical Corrections Act; (3) when the applicant accepted the Regular Army appointment, he lost his Army Reserves status and no longer held an Army Reserves commission; (4) while unfortunate that the applicant was mistakenly advised that he would be allowed to retire as a

---

**2.** "[E]ach officer of the Regular Army who holds the regular grade of lieutenant colonel ... who is not on a list of officers recommended for promotion to the regular grade of colonel ... shall,

if not earlier retired, be retired on the first day of the month after the month in which he completes 28 years of active commissioned service." 10 U.S.C. § 633 (1980).

colonel, he ultimately did accept the Regular Army appointment; (5) while plaintiff could have requested release from active duty to retain his Army Reserves rank of colonel, he would have done so without the benefit of retirement since he had not yet completed 20 years of the qualifying service for retirement purposes prior to the established dates for integration of lieutenant colonels into the Regular Army, and therefore, his acceptance thereof was his most favorable option; (6) as to the applicant's claim of earning the Army Reserves rank of colonel, the ABCMR noted that the applicant was an Army Reserves officer performing all of his service on active duty in a voluntary indefinite status, never served in his Army Reserves rank, and was not promoted to colonel from the active duty list; (7) to grant the applicant's request would be contrary to law and would be giving him a benefit not afforded other individuals in similar situations; and (8) in view of the foregoing, there was no basis for the ABCMR to grant the applicant's request that he be retired in the rank of colonel. *See Admin.* R. at 7–8. On November 5, 1993, Mr. Perez filed suit in this court.

### Contentions of the Parties

Plaintiff, while not an Army Reserves officer at the time of his retirement, was an Army Reserves officer on active duty on September 14, 1981. Consequently, plaintiff argues that he is entitled under § 634 of the Technical Corrections Act to be retired as colonel/USAR, the grade to which he had been selected for promotion on September 14, 1981. Plaintiff contends that, when properly construed, DOPMA and the Technical Corrections Act entitle him to be retired in the grade of colonel/USAR. Plaintiff also argues that Congress intended to protect persons in his situation from forfeiting their right to retire in their Army Reserves grade. Finally, before accepting Regular Army integration, plaintiff was counseled by the Army that such integration would not affect his retirement in the grade of colonel/USAR. Plaintiff argues, therefore, that the government is estopped from denying his right to retire as a colonel.

Defendant responds that plaintiff's claim is contrary to the statutory provisions of DOPMA and the Technical Corrections Act. Section 634 of the Technical Corrections Act, argues defendant, requires plaintiff to be an Army Reserves officer at the time of his retirement in order to be retired at colonel/USAR. Further, the government argues that plaintiff voluntarily chose to integrate into the Regular Army and thus forfeited his Army Reserves grade. According to defendant, the applicable statutory law requires that plaintiff be retired at lieutenant colonel/USRA. Finally, defendant argues that the government cannot be estopped from correctly applying the statutory law, even where its agent provided erroneous information upon which plaintiff relied to his detriment.

### *Discussion*

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations in the complaint are taken as true and all reasonable inferences are drawn in favor of the nonmoving party. *See Marshall v. United States,* 21 Cl.Ct. 497, 499 (1990) (discussing RCFC 12(b)(4)); *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986) (discussing Federal Rule of Civil Procedure ("FRCP") 12(b)(6)). The court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

I. *Mandating Statute.*

The jurisdiction of this court to entertain claims against the government and grant relief is limited by the extent the United States has waived its sovereign immunity. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941); *Dynalectron Corp. v. United States,* 4 Cl. Ct. 424, 428 (1984). Consent to sue is premised on the Tucker Act, 28 U.S.C. § 1491, which provides that an action may be maintained in this court if and only if it is "founded either upon the Constitution or any Act of Con-

gress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id.* § 1491(a)(1). This provision, however, creates no substantive right of recovery, and jurisdiction exists only when predicated upon another money mandating statute or regulation, the violation of which gives rise to a claim for monies due or owing. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) *(en banc).* Plaintiff, referring the court to DOPMATCA, Pub.L. No. 97–22, 95 Stat. 124–138, contends that this threshold jurisdictional requirement has been met. When a statute or regulation "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained," plaintiff may be entitled to monetary relief *Testan,* 424 U.S. at 400, 96 S.Ct. at 954.

## II. *Statutory Interpretation.*

 This case presents the issue of whether, under DOPMA and the Technical Corrections Act, plaintiff was entitled to be retired in the rank of colonel/USAR. Prior to the effective date of DOPMA, plaintiff had been selected for promotion to colonel. However, on January 25, 1982, plaintiff subsequently integrated into the Regular Army as a lieutenant colonel after DOPMA was already in effect.

The central issue in this case is the proper interpretation of the Technical Corrections Act. In dealing with issues of statutory construction, the court strives to ascertain the plain meaning of the statute. *J.M. Huber Corp. v. United States,* 27 Fed. Cl. 659, 663 (1993). It is a fundamental principle of statutory construction that an interpretation that can reconcile all relevant statutory sections into a "harmonious whole" is preferred over one which gives rise to fragmented, ambiguous, or conflicting interpretations of individual sections. *See Candelaria v. United States,* 5 Cl.Ct. 266, 272 (1984) (citing *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982)). When the text of a statutory section has a

plain meaning consistent with the rest of the statute, there is no need or justification for further judicial inquiry that might render the statute in conflict with itself. *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701–02, 66 L.Ed.2d 633 (1981); *Simko Constr., Inc. v. United States,* 852 F.2d 540, 542 (Fed.Cir.1988); *see also I.C.C. Indus., Inc. v. United States,* 812 F.2d 694, 700 (Fed.Cir.1987) (acknowledging the presumption that the same words occurring repetitively within the same statute have the same meaning).

If the language of a contested statute is plain and unambiguous, the inquiry stops and the court need not examine the legislative history. *Rubin,* 449 U.S. at 430, 101 S.Ct. at 701–02; *Simko Constr.,* 852 F.2d at 542. If the plain meaning is not readily discernible, however, then the court may seek guidance in the legislative history. *J.M. Huber Corp.,* 27 Fed. Cl. at 663. The U.S. Supreme Court has reasoned that examination of legislative history can be helpful, albeit unnecessary, in certain cases. "Recourse to the Legislative History of[a statute] is unnecessary in light of the plain meaning of the statutory text. Nevertheless, we consider that history briefly because both sides have spent much of their time arguing about its implications." *Darby v. Secretary of HUD,* 509 U.S. 137, 147, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993); *see also United States v. American Trucking Ass'ns,* 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940) (stating that it is the duty of a court "to construe the language so as to give effect to the intent of Congress.").

Thus, the court begins its analysis by ascertaining the plain meaning of the Technical Corrections Act. The disputed provision of the Technical Corrections Act at issue reads:

SAVINGS PROVISION FOR RETIRED GRADE
OF CERTAIN RESERVE OFFICERS

Sec. 634. Unless entitled to a higher grade under any other provision of law, a member of the Army or Air Force who is a reserve officer and who–

(1) is on active duty on September 14, 1981; and

(2) after such date retires under section 3911 [20–year Army retirement] or 8911 [20–year Air Force retirement] of Title 10, United States Code, is entitled to retire in the reserve grade which he held or to which he had been selected for promotion on September 14, 1981.

10 U.S.C. § 611 (1983) (codifying Transition Provision § 634). By its own terms § 634 applies to those members who are Army Reserves officers at the time of its application, i.e., upon retirement. The statute does not refer to a member on active duty who was an Army Reserves officer on September 14, 1981, but rather to a member who is "a reserve officer and who–(1) is on active duty on September 14, 1981; and (2) after such date retires ..." The interpretation proffered by plaintiff essentially asks this court to read the first "and" following the word "officer" out of the statute. The requirements that a member be an Army Reserves officer at the moment of retirement and on active duty on September 14, 1981, are separate and distinct. It is not enough that plaintiff used to be an Army Reserves officer on September 14, 1981. He must also be an Army Reserves officer when this provision applies to him upon his retirement, i.e., on March 31, 1991 when plaintiff retired from the Regular Army. This is the only interpretation which gives effect to all the words in the statute.[3]

To the extent the statutory language may be subject to more than one reasonable interpretation, the above interpretation of § 634 is further supported by the House Reports on DOPMA and the Technical Corrections Act. Examination of the accompanying legislative analysis makes clear that the disputed provision was designed to apply only to officers on Army Reserves status at the time they retire. The House Report of § 634, entitled "Savings Provisions For Retired Grade Of Certain *Reserve* Officers," describes who those "Certain Reserve Officers" were intended to be:

> The ... officer would be covered [by this provision] provided that on such date the member also holds a valid appointment in a reserve commissioned grade. Under this new section the right to voluntary retirement in the *reserve commission grade held on the date of retirement* is preserved for these active duty members.

H.R. REP. No. 97–141, 97th Cong., 1st Sess. (1981), *reprinted in* 1981 U.S.C.C.A.N. 24, 49 (emphasis added). It is thus apparent that § 634 was intended to apply only to those servicemen who held an Army Reserves commission upon retirement, not officers who had previously held Army Reserves commissions but later integrated into the Regular Army. This interpretation is fully consistent with the plain language of § 634 proffered by defendant.

The court realizes that prior to enactment of DOPMA, plaintiff would have been able to maintain his dual status in the Regular Army and the Army Reserves. Indeed, one of the principal features of DOPMA was to "provide a single permanent promotion structure for each of the services, replacing the dual temporary and permanent promotion systems presently used in the Army...." H.R. REP. No. 96–1462, 96th Cong., 2d Sess. (1980), *reprinted in* 1980 U.S.C.C.A.N. 6333, 6336. Congress specifically intended to eliminate "hip-pocket" promotions.[4] *Id.* at 6344.

---

**3.** Defendant also argues that this interpretation is supported by the structure of § 634. If plaintiff's interpretation were proper, argues defendant, the Army Reserves officer requirement would logically be found in the same paragraph as the September 14, 1981 active duty requirement. Section 634 plainly states in the preamble that it applies to Army Reserves officers and only states in a subparagraph that the member must have been on active duty on September 14, 1981. Had Congress intended this provision to apply to all Army Reserves officers on active duty on that date, the Army Reserves officer requirement would have been in the same subparagraph rather than in the preamble. The court notes that the statute could easily have been worded more

clearly by inserting the phrase "at the time of retirement" immediately after "reserve officer" in the preamble. Given the inexact structure of § 634, the court gives little weight to any argument that relies on structure to lend support to a particular interpretation.

**4.** DOPMA sought to create an "all-regular career force" by eliminating "hip-pocket" promotions, the system of separate consideration by active and reserve selection boards in regard to promotions. Under the dual-promotion system prior to DOPMA, an Army Reserves officer in the Army or Air Force could be "retired after 20 years' active duty in a reserve grade that is higher than any grade in which he served on

While Mr. Perez held an Army Reserves commission on the date of enactment of DOPMA and the Technical Corrections Act, he did not ultimately retire from the Army Reserve ranks. Section 634 applies to persons situated as Mr. Perez was on September 14, 1981, but who did not integrate into the Regular Army. Under DOPMA, an Army officer voluntarily or involuntarily retired would be retired in the highest grade in which the officer served on active duty for not less than three years or six months, respectively. 10 U.S.C. § 1370. If plaintiff had chosen not to integrate into the Regular Army, he would have been able to retire as a colonel/USAR under this savings provision without serving the six-month or three-year in grade requirement. This is confirmed by the House Report for the Technical Corrections Act.[5] Ultimately, however, Mr. Perez did integrate into the Regular Army, inadvertently abandoning his ability to invoke § 634's savings provision because he no longer held an Army Reserves commission at the moment of retirement. Application of this savings provision to plaintiff, therefore, is contrary to law.

### III. *Estoppel.*

 Plaintiff argues alternatively that, even if he is not covered by section 634 of the Technical Corrections Act, the government is nonetheless estopped from denying him the benefit of the inapplicable statute as a result of erroneous information provided by Major Cook. It is well-settled, however, that the government is not bound by its agents who act beyond the scope of their authority and/or contrary to statute. Granting plaintiff the relief he seeks would obligate money from the public treasury in violation of the Appropriations Clause[6] of the U.S. Constitution. Estoppel does not operate against the

government in favor of private litigants, even when a government agent has provided erroneous information.

In *OPM v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), the plaintiff relied on erroneous advice given to him regarding the statutorily determined, maximum amount of outside income he could receive without jeopardizing his government disability annuity. Consequently, the plaintiff exceeded this statutory cap and unwittingly forfeited his annuity payments. He then claimed, as Mr. Perez does in the resent case, that the government should be estopped from finding him ineligible as a result of its agent's own error. The U.S. Supreme Court held in *OPM* that the judiciary and executive branches are precluded from applying estoppel against the government when a claimant is seeking public funds, since the Appropriations Clause prohibits the award of monetary relief not authorized by the Legislative branch. *OPM,* 496 U.S. at 424–26, 110 S.Ct. at 2471–72. The Court stated:

> Extended to its logical conclusion, operation of estoppel against the Government in the context of payment of money from the Treasury could in fact render the Appropriations Clause a nullity. If agents of the Executive were able, by their unauthorized oral or written statements to citizens, to obligate the Treasury for payment of funds, the control over public funds that the Clause reposes in Congress in effect could be transferred to the Executive.... The whole history and practice with respect to claims against the United States reveals the impossibility of an estoppel claim for money in violation of a statute.

*OPM,* 496 U.S. at 428–30, 110 S.Ct. at 2473–74; *see also Koyen v. OPM,* 973 F.2d 919, 921–22 (Fed.Cir.1992). Although the Su-

---

active duty." H.R. Rep. No. 96–1462, 96th Cong., 2d Sess. (1980), *reprinted in* 1980 U.S.C.C.A.N. 6336, 6344.

**5.** The House Report states:
 The savings provision added by this new section is needed to clarify the original intent of the general savings provision in section 703 of DOPMA. It recognizes that some members holding or selected for promotion to a reserve commissioned grade on September 14, 1981, would, under current law, be able to retire in

such grade in the future even though they would be unable to meet the six-month requirement of section 1370(a)(1).
 H.R. Rep. No. 97–141, 97th Cong., 1st Sess. (1981), *reprinted in* 1981 U.S.C.C.A.N. 24, 49.

**6.** The Appropriations Clause of the Constitution provides, "No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." Art. I, 9, cl. 7.

preme Court in *OPM* did not categorically state that estoppel will never apply against the government, it has summarily reversed every finding of estoppel brought before it. *Id.* at 422–23, 110 S.Ct. at 2470–71. That same rule of law controls here.

The conclusion that the Appropriations Clause binds this court in its decision here is inescapable. The award plaintiff seeks as a result of being misinformed that he would be grandfathered into § 634's savings provision despite his integration into the Regular Army is "in direct contravention of the federal statute upon which his ultimate claim to the funds must rest...." *OPM,* 496 U.S. at 424, 110 S.Ct. at 2471. This court has already determined that the statute at issue requires that an officer hold rank in the Army Reserves at the time of retirement and that he be on active duty on September 14, 1981. In other words, it is statutorily insufficient that plaintiff used to be an Army Reserves officer on September 14, 1981. As a result of this determination, plaintiff does not fit within the statutory framework of the Technical Corrections Act. Accordingly, no money may be paid out to plaintiff, as none has been properly appropriated by Congress, notwithstanding his likely reliance on the unauthorized, erroneous information provided by Major Cook.

The court, noting that this case at bar does not present a unique or untested set of facts, sympathizes with plaintiff, for it is undisputed that before making a major career and retirement decision, Mr. Perez first sought guidance from the Army and was regrettably, erroneously informed that he would be able to retire later as a colonel/USAR if integrated into the Regular Army. The court further recognizes that plaintiff likely relied on this advice to his detriment because he may have planned and saved for his retirement based on an expectancy of retiring in a higher grade. Nevertheless, plaintiff has not established that, even if he had entertained such expectations, he would have received a larger amount of retirement compensation. Further, it is not for the court to conjecture as to what other factors may have affected plaintiff's decision had he not been given erroneous information. Indeed, there was no assurance that plaintiff would have been guaranteed his position with the Army Reserves until the point of retirement had he not chosen to integrate. Nor has plaintiff made a showing that but for the erroneous advice, he would never have opted for Regular Army status despite alternate inducements such as military prestige. Most importantly, however, even if plaintiff were able to establish these circumstances, he still would not be entitled to the requested relief as a matter of law.

DOPMA and the Technical Corrections Act, properly construed, do not authorize plaintiff to be retired in an Army Reserves grade when he did not hold a Army Reserves commission at the time of retirement. Thus, while the court understands plaintiff's plight, in the absence of any supporting statutory provision, the relief requested by plaintiff is not proper as a matter of law.

### *Conclusion*

After careful consideration of the oral arguments, briefs, exhibits, and the applicable law, the court GRANTS defendant's RCFC 12(b)(4) motion and directs the Clerk of the court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. No costs.

**IT IS SO ORDERED.**