Calvin L. BAILEY, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 00–93C.

United States Court of Federal Claims.

March 17, 2004.

Martin A. Kilpatrick, Greenville, MS, for plaintiffs. Wes W. Peters, Jackson, MS, of counsel.

Carolyn J. Craig, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Donald E. Kinner, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, for defendant. Stephan C. Roth, United States Army Corps of Engineers, Vicksburg, MS, of counsel.

*OPINION AND ORDER*

HEWITT, Judge.

This is a civilian pay case. Plaintiffs have brought suit against the United States, acting through the United States Army Corps of Engineers (Corps), seeking reimbursement of certain travel expenses, including mileage, hotel and other incidental expenses,

pursuant to 5 U.S.C. §§ 5701–5710 (2000) and the Federal Travel Regulation, 41 C.F.R. pts. 300–304 (2003). Complaint (Compl.) ¶¶ 24–27, 47. Defendant moves to dismiss plaintiffs' complaint for failure to state a claim or, alternatively, moves for summary judgment. Plaintiffs have filed a cross-motion for summary judgment. For the following reasons, defendant's motion to dismiss is DENIED, defendant's motion for summary judgment is GRANTED, and plaintiffs' cross-motion for summary judgment is DENIED.

I. Background

Plaintiffs are currently employed by River Operations Branch of the Corps in the Vicksburg District, Compl. ¶¶ 1–23, and perform certain duties aboard the Mat Sinking Unit (MSU), *id.* ¶ 38; Appendix to Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (Def.'s Mot. App.) at 1 (Declaration of Dennis O. Norris, Assistant Chief of the Corps' Operations Division in Vicksburg).[1] The Corps' Vicksburg District River Operations Branch is "responsible for channel improvement, dredging, and navigation activities on the lower Mississippi River and other rivers throughout Arkansas, Louisiana, and Mississippi." Def.'s Mot.App. at 1. The MSU performs seasonal revetment operations.[2] *Id.* Each year in the late summer, employees aboard the MSU begin several months of work along the Mississippi River. *Id.* The work is part of an annual construction program to stabilize and fortify the river banks to withstand the erosive forces of the constantly moving Mississippi River. *Id.* at 1–2; *see also* United States Army Corps of Engineers, Vicksburg District: Taming the Old Man, at *http://www.mvk.usace.army.mil/whatwedo/oleman.htm* (last visited Mar. 15, 2004). The

---

1. Eighteen of the twenty-three plaintiffs in this case are members of a bargaining unit covered by a 1996 Collective Bargaining Agreement. *See Bailey v. United States,* 52 Fed. Cl. 105, 107 (2002). In prior proceedings, the court ordered a limited remand to the agency for administrative exhaustion of the claims of the five, non-union plaintiffs. *Id.* On February 5, 2003, the agency issued its decision denying the claims of the non-union plaintiffs. Appendix to Defendant's Motion to Dismiss, or, in the Alternative,

Motion for Summary Judgment at 15–19. Further to an informal telephonic status conference held on March 16, 2004, and by agreement of the parties, the court deems the claims of both the union and non-union plaintiffs indistinguishable and applies its judgment equally to all plaintiffs.

2. A revetment is a facing (such as stone or concrete) that sustains an embankment. Def.'s Mot. App. at 1.

revetment work involves the placing of a cast of uniform slabs of flexible concrete blocks, called an "articulated concrete mattress" or a mat, along the river banks. Def.'s Mot.App. at 1–2; *see also* United States Army Corps of Engineers, Vicksburg District: Taming the Old Man, at *http://www. mvk.usace.army.mil/whatwedo/oleman.htm* (last visited Mar. 15, 2004). The MSU places more than "20 million square feet of mattress . . . each year at over 30 different locations along the Mississippi River from near Cairo, Illinois, to the Gulf of Mexico, and along the Atchafalaya River and Red River." Def.'s Mot.App. at 8–9 (Declaration of Willie H. Brown, Lead Human Resources Specialist with the Corps in Vicksburg). The mat-sinking operations of the MSU are unique, "the only plant of its kind in the world." *Id.* at 8.

The MSU "consists of four quarter barges where employees sleep, two tractor barges, 48 mat barges, two fuel oil barges, one crane barge, two material barges, three anchor barges, and two personnel barges." Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (Def.'s Mot.) at 5 (citing Def.'s Mot.App. at 5). In addition, the MSU has two towboats as well as several other vessels for its support and use. *Id.* During the revetment season, the MSU's employees live and eat on quarter boats[3] that tie off to the banks near the work area. Def.'s Mot.App. at 2.

The MSU has approximately 65 full-time permanent employees, approximately 140 permanent seasonal employees and approximately 130 temporary employees performing the seasonal revetment operations. Def.'s Mot.App. at 2. The permanent seasonal employees work anywhere from 4–10 months of the year, but remain on the Corps' employment rolls even when they are released at the end of the season. *Id.* at 9. Temporary employees are hired during revetment season, are terminated at the end of the season, and are removed from the Corps' employment rolls at the time of their termination. *Id.* Plaintiffs are either full-time permanent employees or permanent seasonal employees.

*Id.* at 2. Although the employment term of the permanent seasonal employees is not to exceed 10 months, Def.'s Mot. at 5, the Corps acknowledges that, "as a practical matter," most of the seasonal employee plaintiffs work approximately 50 weeks a year, *id.* The legal issues in this case affecting full-time permanent employees and permanent seasonal employees are substantially the same because the employees work nearly the same length of time at the same sites. *See id.;* Pls.' Resp. at 4–5.

The dispute arises because an employee in a temporary duty (TDY) status may be entitled, under circumstances prescribed by the Federal Travel Regulation, to the reimbursement of certain travel expenses incurred for periodic return trips to his or her home. *See* 41 C.F.R. § 301–11.23 (2003).

Plaintiffs allege that their work aboard the MSU requires "travel to various points along the Mississippi River . . . at substantial distances away from the geographic limits of [their] official [duty] station as defined by 41 C.F.R. [§ ] 300–3.1 and as listed and defined on their . . . Notifications of Personnel Action [Forms (known as SF–50s) ]." Compl. ¶ 33. Plaintiffs state that, due to an insufficient number of government vehicles to transport employees home during their off days, they have used their personal vehicles and have incurred significant mileage and motel expenses traveling between their homes and the MSU and moving their personal vehicles from one work assignment location to another along the Mississippi River during revetment season. *Id.* ¶¶ 36–38. Plaintiffs complain that the Corps has denied their claims, pursuant to the Federal Travel Regulation, for reimbursement of the travel expenses incurred "incident to [their] extended temporary duty assignment," *id.* ¶ 39, by marking through the "Vicksburg/Warren County, Mississippi" duty station designation on plaintiffs' personnel (SF–50) forms and handwriting or otherwise substituting "wherever located," *id.* ¶ 43; *see also* Plaintiffs' Response to Defendant's Motion to Dismiss or for Summary Judgment, and Plaintiffs' Cross Motion for Summary Judgment (Pls.'

---

**3.** Defendant appears to refer interchangeably to these vessels as quarter barges and as quarter boats. *Compare* Def.'s Mot.App. at 2 *with* Def.'s Mot.App. at 5.

Resp.) at 2 n. 2, 16–21. Plaintiffs argue that this redesignation of their official duty station is improper because it is contrary to law and the Corps' own policy and inconsistent with plaintiffs' employment records. *See* Pls.' Resp. at 16, 22.

Defendant argues that it has properly designated plaintiffs' official duty station as the MSU and that plaintiffs are not entitled to recover travel reimbursements for their voluntarily incurred costs. Def.'s Mot. at 11–18. Alternatively, defendant argues that, even if plaintiffs should be viewed as in temporary duty status during the revetment season, they are still not entitled to reimbursement for their off-duty travel expenses. *Id.* at 19–24. Defendant contends that plaintiffs are not entitled to travel reimbursement under the applicable statutes and regulations. *Id.* at 24–27.

## II. Discussion

### A. Standards of Review

"A motion to dismiss under Rule [12(b)(6)] for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy."[4] *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir. 1998). A dismissal under RCFC 12(b)(6) is proper "only when it is 'beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief.'" *Ponder v. United States,* 117 F.3d 549, 552 (Fed.Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); citing *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997)). Such dismissal is a dismissal on the merits. *Id.* at 552–553.

"Summary judgment shall be rendered if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Coast Fed. Bank, FSB v. United States,* 323 F.3d 1035, 1037 (Fed.Cir.2003); *see also* RCFC 56(c) (setting out the standard for summary judgment). Material facts are those "that might affect the outcome of the suit under the

governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over a material fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

"Where a movant has supported its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant may not rest upon general denials in its pleadings or otherwise, but must proffer countering evidence sufficient to create a genuine factual dispute." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed.Cir.1987). "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland Power Coop. v. United States,* 16 F.3d 1197, 1202 (Fed.Cir. 1994).

### B. The Reimbursement of Travel Expenses for Federal Agency Employees

The reimbursement of certain federal travel expenses, including mileage, hotel and other incidental expenses, is governed by 5 U.S.C. §§ 5701–5710, the statutory provisions addressing federal Travel and Subsistence Expenses and Mileage Allowances, and 41 C.F.R. pts. 300–304, the Federal Travel Regulation. Section 301–11.23 of the Federal Travel Regulation addresses the circumstances under which a federal agency may reimburse an employee for travel home during a temporary duty assignment. 41 C.F.R. § 301–11.23.

The parties in this case dispute whether plaintiffs are entitled to the travel expenses afforded federal employees during temporary duty assignments. Plaintiffs claim that, under the Federal Travel Regulation, they are entitled to the reimbursement of certain travel expenses incurred during the revetment season because their work aboard the MSU during that time constitutes an "extended duty assignment[ ] outside the bor-

---

4. Because the case predates the May 1, 2002 revision to the Rules of the United States Court

of Federal Claims, RCFC 12(b)(4) is the provision actually cited in the decision.

ders of their official station." Compl. ¶ 36. Plaintiffs challenge the duty station designation altered to read "wherever located" on their personnel (SF–50) forms on the ground that such designation does not conform to the definition of an "official station" set forth in Federal Travel Regulation 41 C.F.R. § 300–3.1. Compl. ¶¶ 31, 43; *see* Pls.' Resp. at 14–16. Plaintiffs also argue that the designation is inconsistent with the Corps' own policy, the applicable case law, and the original designations reflected on plaintiffs' personnel forms. *See* Pls.' Resp. at 12, 16–21.

Defendant asserts that plaintiffs cannot recover the travel expenses sought because the Corps has designated plaintiffs' official station as the MSU "wherever located" and thus, plaintiffs are not on temporary duty assignment during the revetment season. Defendant contends that its duty station designation of "wherever located" for plaintiffs complies with the applicable regulations and case law. Def.'s Mot. at 11–16. Defendant argues that its duty station designation is appropriate because "plaintiffs' duties with the agency ... are primarily based upon their duties on the [MSU], both on and off season." Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment and Opposition to Plaintiffs' Cross Motion for Summary Judgment (Def.'s Reply) at 3 (citing Def.'s Mot.App. at 34–45); *see also* Def.'s Mot. at 12 (stating that plaintiffs' "primary duties" are aboard the MSU).

To determine whether plaintiffs are entitled to reimbursement of the travel expenses sought, the court must first address the issue of where plaintiffs' official work station is located.

1. Plaintiffs' "Official Station"

Section 300–3.1 of the Federal Travel Regulation defines the "official station" of an employee of a federal agency as "the location of the employee's ... permanent work assignment." 41 C.F.R. § 300.3–1 (definition of "Official station"). That regulation further defines the "geographic limits" of the official station for an employee as:

(1) The corporate limits of the city or town where stationed or if not in an incorporated city or town;

(2) The reservation, station, or other established area (including established subdivisions of large reservations) having definite boundaries where the employee is stationed.

*Id.*

Plaintiffs argue that defendant has improperly relied on the language "established area" and therefore, has improperly designated plaintiffs' "official station" as the "area" of the mobile MSU. Pls.' Resp. at 14–15. Plaintiffs contend that "under the regulatory definition of the term 'official station,' one never resorts to the more amorphous designation of an 'area,' unless the greater part of the employee's work is not performed with[in] the corporate limits of a city or town." *Id.* at 16. Plaintiffs urge that a proper reading of the Federal Travel Regulation compels a finding that plaintiffs' "official station" is the city of Vicksburg, Mississippi. *Id.* at 14, 16. Plaintiffs assert that "in order to make 'wherever located' fit within the Federal Travel Regulation's definition of 'official station[,]' one must ignore the requirement that a city or town with incorporated limits be designated, when the greater part of the employee's work is within a city or town, and accept a conglomeration of barges, tow boats and other equipment as a more generalized 'area' with 'definite boundaries.' " *Id.* at 14.

Defendant contends that its designation "is clearly in compliance with the regulation." Def.'s Mot. at 11. Defendant argues that "[t]he regulation broadly allows for 'an established area,' with 'definite boundaries,' giving illustrative, but not exhaustive, examples of limited areas that do not include the usual city or town." *Id.* Defendant concedes, however, that it is "unaware of a specific regulatory authority for the use of the term 'wherever located.' " *Id.* at 12.

Consistent with the Federal Circuit's guidance regarding cases involving the interpretation of a statute or regulation, the court begins its review with the language of 41 C.F.R. § 300–3.1. *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920–21 (Fed.Cir.

2004) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)).

### a. Regulatory Language

■ The regulation defines the geographic limits of an employee's "official station" in the alternative, providing that if the work station is "not in an incorporated city," it may be defined as an "established area ... having definite boundaries." 41 C.F.R. § 300–3.1. By defining an "official station" in terms of "geographic limits," 41 C.F.R. § 300–3.1, the text of the regulation places particular emphasis on the location where an employee performs his work. Moreover, because the regulation defines an official station in terms of the particular geographic limits of a city or town, but permits a duty station designation of an "established area ... having definite boundaries" if the location is not in an incorporated city, 41 C.F.R. § 300–3.1, it is the view of the court that the language of the regulation evinces a preference for the designation of an official station in a city or town if possible.

Although the actual text of the regulation does not include the qualification urged by plaintiffs, specifically, that a city must be designated "when the greater part of the employee's work is within a city," *see* Pl.'s Resp. at 14, the plain language of the regulation "that the official station ... is the location of the employee's ... permanent ... work assignment" direct attention to the place where plaintiffs perform their "permanent work assignment." For further interpretive guidance on the issue of where plaintiffs' "official station" is located, the court turns to the case law.

### b. Case Law

Plaintiffs argue that "[l]ong[-]standing precedent has established that a federal employee's 'official station' is the place: 'where the employee expects, and is expected, to spend the greater part of his time for the government.'" Pls.' Resp. at 11 (citing *Matter of Kenneth L. Peck—Mileage Allowance and Per Diem,* Comp. Gen. B–198,887, 1981 WL 23363, at *2 (Sept. 21, 1981); *Matter of Naval Surface Weapons Center—Per Diem Entitlement While Aboard Activity-Owned Boats,* Comp. Gen. B–193,542, 1979 WL 12407, at *2 (June 19, 1979); *Matter of Willie L. Adams—Claims by Seasonal Employees for Per Diem,* Comp. Gen. B–186,-045, 1976 WL 9514, at *2 (Nov. 4, 1976)). Plaintiffs assert that more than half of their work time is spent working in Vicksburg, Mississippi. *Id.* at 11; Plaintiffs' Revised Statement of Proposed Material and Uncontroverted Findings (Pls.' Facts) ¶¶ 2, 3. Plaintiffs further assert that hundreds of their personnel forms, including: (1) those prepared by the Human Resources Directorate in Vicksburg, Mississippi prior to 1997, (2) those prepared by the South West Civilian Personnel Operations Center in Huntsville, Alabama between 1997 and February 2002, and (3) those prepared by the South Central Civilian Personnel Operations Center in Huntsville, Alabama after February 2002, designate plaintiffs' official station as Vicksburg with no alternative designation of "wherever located." *Id.* ¶¶ 5–8. Noting that defendant has "never been consistent in recording [p]laintiffs' official station as 'wherever located,'" *id.* ¶ 9, plaintiffs state that they are all paid in accordance with the Vicksburg Wage Survey Area, *id.* ¶ 24. Plaintiffs point out that, when the MSU is working within the Memphis Wage Survey Area or the New Orleans Wage Survey Area, they continue to be paid in accordance with the Vicksburg Wage Survey Area. *See id.* ¶¶ 24–26. Plaintiffs contend that the applicable case law and plaintiffs' expectations concerning their workplace compel a finding that plaintiffs' official station is Vicksburg, Mississippi. Pls.' Resp. at 11, 16.

Defendant contends that "[p]laintiffs' challenge to the designation of their duty station as the [MSU], 'wherever located,' conforms neither with reality nor the law." Def.'s Mot. at 14. Defendant argues that use of the term "wherever located" as an employee's duty station is proper under the case law. Def.'s Mot. at 12–13. Defendant explains that, due to: "human error" and "administrative oversight," Def.'s Reply at 12, some of plaintiffs' personnel forms reflect a duty station designation of Vicksburg, Mississippi rather than the MSU or wherever located,

Def.'s Mot. at 7–8; Def.'s Reply at 12. While discounting the computer-generated duty station designation on plaintiffs' personnel forms, *see* Def.'s Reply at 11–12; Def.'s Mot. at 7–8, defendant nonetheless points to the position descriptions on the same personnel forms as evidence that plaintiffs' "primary duties are to work aboard [the MSU]." Def.'s Mot. at 12. As do plaintiffs, defendant points to the 1976 Comptroller General of the United States opinion in *Willie L. Adams* as support for the use of the term "wherever located" to describe an official duty station.[5] Def.'s Mot. at 12–14.

In its unpublished 1976 opinion in *Willie L. Adams,* the Comptroller General determined, on reconsideration, that the claims for per diem expenses presented by persons employed by the Corps as temporary or seasonal employees were properly denied. *Willie L. Adams,* 1976 WL 9514, at *1, 4. The Comptroller General noted that the temporary or seasonal employees were hired during revetment season to work aboard various Corps' vessels with an official duty station designation of "wherever [the Corps' vessel] was located." *Id.* at *1. The Comptroller General observed that the official duty station designation for the temporary or seasonal employees was different than the official duty station designation for permanent Corps' employees "whose official duty stations were located other than where the [mobile] units were operating and who were assigned to [the mobile] units on temporary duty during the revetment operating season." *Id.*

Explaining that the Corps had "concluded that the official duty station of [the] temporary employees would be the geographic site where the greatest percentage of work would be performed," *id.,* the Comptroller General stated:

> Our office has long held that an employee's official duty station is the place where he expects, and he is expected, to spend a greater part of his time. We have also held that the authority to designate a post of duty or official duty station does not include the authority to designate a place

contrary to the factual circumstances present for the purpose of paying per diem. Therefore, whether a particular duty station is in fact permanent or temporary is not merely a matter of administrative designation but also a question of fact to be determined from the employee's orders, the nature and the duration of the assignment, and the duty to be performed.

*Id.* at *2 (citations omitted). The determination in *Willie L. Adams* that the duty station designation of "wherever located" for the seasonal employees was not improper appeared to turn not only on the variability of the seasonal employees' work site location but also the lack of time spent in any one particular location. *See* 1976 WL 9514, at *1–3.

Subsequently, in *Naval Surface Weapons Center,* the Comptroller General again stated that "[a]n employee's official duty station is the place where he ordinarily expects, and is expected to spend a greater part of his time." 1979 WL 12407, at *2. Because the employees' job descriptions indicated that "nearly all the[ir] work is performed on the [government] boats" and because the employees commuted to this job site from their places of residence, the Comptroller General concluded that the boats and the home port of the boats constituted the employees' permanent duty station. *Id.* The determination that the boats on which the employees conducted daily research, development and recovery projects away from the port of Fort Lauderdale constituted the permanent duty station together with the home port appeared to turn on the regular return of the boats to the Fort Lauderdale port. 1979 WL 12407, at *1–2.

Two years later, in *Kenneth L. Peck,* the Comptroller General advised:

> Our decisions have long held that the location of an employee's official duty station is a question of fact, and is not limited by the administrative designation. It is the place where the employee performs substantially all of his duties and spends the greater part of his time. The question of whether an assignment to a particular location

---

5. Noting that Comptroller General opinions are not binding on the court, defendant observes that such opinions provide instructive interpretations of statutes and regulations. Def.'s Mot. at 13 n. 9.

should be considered a temporary duty assignment or a permanent change of duty station is a question of fact to be determined from the orders directing assignment, the duration of the assignment, and the nature of the duties to be performed under the orders.

1981 WL 23363, at * 2 (citations omitted). The Comptroller General observed that " '[w]hen a period of temporary duty assignment at one place will exceed 2 months, consideration will be given to changing the employee's permanent duty station unless there is reason to expect the employee to return to his permanent duty station within 6 months from the date of initial assignment or the temporary duty expenses are warranted in comparison with permanent change-of-station movement expenses.' " *Id.*

■ The Comptroller General decisions require that a court consider certain factual circumstances in determining where an employee's official duty station is located, including where the employee spends the greater portion of his or her time. While the administrative designation on an employee's personnel form may be persuasive, it is not a dispositive factor on the issue. *See Kenneth L. Peck,* 1981 WL 23363, at * 2; *Willie L. Adams,* 1976 WL 9514, at *2.

■ Consistent with the designation of an official station in terms of geographic limits as contemplated by 41 C.F.R. § 300–3.1, the Comptroller General's decisions in *Kenneth L. Peck, Naval Surface Weapons Center,* and *Willie L. Adams* all provide that a designation of an employee's official station as a city or town is proper unless the employee spends the greater portion of his or her time somewhere other than in an incorporated city. *See* 41 C.F.R. § 300–3.1. In considering the place where an employee spends the greater portion of his or her time to determine where an employee's official station or permanent duty station is, the Comptroller General has looked not only at the location where an employee performs his or her work and the duration of that work, but has looked also at the location, if any, to which an employee returns. In considering the particular circumstance of employees who work on vessels or mobile units, the reasoning of the Comptroller General is especially instructive.

■ The decisions of the Comptroller General in *Kenneth L. Peck, Naval Surface Weapons Center* and *Willie L. Adams* indicate that when an employee returns to a particular location in an incorporated city or town and spends the greater portion of his or her time in the incorporated city or town, that location is deemed the official station or permanent duty station. That the nature of an employee's work requires work aboard a mobile unit or vessel does not does not appear to compromise the designation of a city or town as the employee's official station provided the employee returns to the city or town and spends the greater portion of his or her time working there. *See Naval Surface Weapons Center,* 1979 WL 12407, at *2; *Willie L. Adams,* 1976 WL 9514, at *3.

■ The parties in this case agree that plaintiffs are Corps employees with various responsibilities aboard the MSU as reflected in the position descriptions included in plaintiffs' personnel records. Pls.' Facts ¶ 1; Pls. Resp. at 4–5; Defendant's Proposed Findings of Uncontroverted Fact (Def.'s Facts) ¶ 1; Def.'s Mot. at 12. The parties also agree that plaintiffs are properly paid the prevailing wage area rate for Vicksburg, Mississippi, the headquarters of the MSU. Pls.' Facts ¶ 24; Def.'s Reply at 15. The parties agree as well that plaintiffs work for the Corps at least 11 months of the year. *See* Pls.' Facts ¶¶ 1–3; Pls.' Resp. at 11; Def.'s Facts ¶ 20; Def.'s Mot. at 5; Def.'s Mot.App. at 2. The parties further agree that revetment season does not exceed four months and that, after revetment season ends in November, the MSU is docked in Vicksburg, Mississippi during lay-up season. *See* Pls.' Resp. at 6; Def.'s Facts ¶¶ 5, 8; Def.'s Mot. App. at 7. Moreover, the parties do not dispute that, during lay-up season, plaintiffs continue to perform certain duties aboard the MSU as well as other duties in Vicksburg. *See* Pls.' Facts ¶¶ 2–3; Pls.' Resp. at 11, 16; Def.'s Facts ¶ 5, 20, 51, 53; Def.'s Reply at 3. Rather, the crux of the parties' dispute, as defendant stated in its briefing, is the legal issue of "whether the plaintiffs' duty station *must* be designated as the geographic loca-

tion of the Corps' headquarters in Vicksburg, Mississippi (where the [MSU] is docked during the off[-]season), or whether the Corps has properly exercised its discretion in designating the duty station as the [MSU] itself, wherever it is located." Def.'s Reply at 3. The court believes that the language of the Federal Travel Regulation and the relevant case law support plaintiffs' position.

Consistent with the original designation of Vicksburg as plaintiffs' permanent duty station on plaintiffs' personnel forms, more than half of plaintiffs' time is spent working in Vicksburg performing tasks aboard the MSU and other duties as assigned. Following revetment season, plaintiffs expect to and, in fact, do return to Vicksburg to perform their work.

Contrary to defendant's assertions, plaintiffs' position in this case is supported by both the factual circumstances of plaintiffs' employment and the case law. Defendant's effort to designate plaintiffs' official station as wherever located when the greater portion of plaintiffs' work time is spent in an incorporated city does not comport with the applicable law. The determination of an employee's official station "is not merely a matter of administrative designation but also a question of fact." See Willie L. Adams, 1976 WL 9514, at *2. Accordingly, the court finds that plaintiffs' official station is Vicksburg, Mississippi and that plaintiffs' time spent aboard the MSU during revetment season effectively constitutes a temporary duty assignment. See Matter of J. Michael Tabor—Travel Expenses—Determination of Actual Permanent Duty Station, Comp. Gen. B–211,626, 1983 WL 27216, at *2 (July 19, 1983) (identifying three factors in determining whether an assignment is temporary or permanent: the orders directing the assignment, the duration of the assignment and the nature of the duties to be performed).

2. Plaintiffs' Entitlement to Travel Expenses

 In its briefing, defendant argues that, were the Corps to adopt plaintiffs' position regarding their official work station, plaintiffs still "would not obtain the ... relief they seek." Def.'s Reply at 5. Defendant states that "[e]ven if the agency placed plaintiffs on [temporary duty assignment] orders during the mat sinking season, plaintiffs' request for mileage reimbursement is not authorized pursuant to the authority of the Federal Travel Regulation and the Joint Travel Regulations [for the Department of Defense Civilian Personnel]." Id.; see also Def.'s Mot. at 19. Defendant points out that section 301–11.23 of the Federal Travel Regulation, which specifically addresses the circumstances under which an employee on temporary duty assignment may be reimbursed for travel home, permits but does not require an agency to authorize travel expenses for occasional return travel to an employee's home. Def.'s Mot. at 19–20; Def.'s Reply at 5.

Plaintiffs responded to this argument with a conclusory recitation that they are "entitled to the benefits of the [ ] Federal Travel Regulations" without citation to relevant or persuasive authority addressing the nature of or extent of the discretion that the Federal Travel Regulation affords the agency. See Pls.' Resp. at 24.

Section 301–11.23 of the Federal Travel Regulation provides that a federal agency:

> *may authorize* per diem or actual expense and round-trip transportation expenses for periodic return travel on non-workdays to [an employee's] home or official station under the following circumstances:
>
> (a) The agency requires [the employee] to return to [his or her] official station to perform official business; or
>
> (b) The agency will realize a substantial cost savings by returning [the employee] home; or
>
> (c) Periodic return travel home is justified incident to an extended [temporary duty] assignment.

41 C.F.R. § 301–11.23 (emphasis added). Because plaintiffs in this case seek reimbursement of travel expenses for their periodic return travel home rather than a "return to [their] official station to perform official business," the circumstance described in 41 C.F.R. § 301–11.23(a) does not apply here. The court examines plaintiffs' claims in light of subsections (b) and (c) of the regulation.

Subsection (b) provides that an agency may authorize "transportation expenses for periodic return travel on non-workdays to [an employee's] home ... [when] [t]he agency will realize a substantial cost savings by returning [the employee] home." 41 C.F.R. § 301–11.23(b). The Joint Travel Regulations for the Department of Defense Civilian Personnel, which also address "[a]uthorized [t]rips [h]ome during [e]xtended [b]usiness [temporary duty assignments], require that an analysis be conducted at least every other year to determine that the periodic return travel costs are outweighed by the savings." Supplemental Appendix to Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment and Opposition to Plaintiffs' Cross–Motion for Summary Judgment (Def.'s Supp.App.) at 3. The Joint Travel Regulations state that the "assignment length and purpose, return travel distance, increased member or employee efficiency and productivity, and reduced recruitment and retention costs are to be considered" as part of the biennial analysis. *Id.* The Joint Travel Regulations further state that return trips home may be authorized "only when travel funds are available to support the travel expenses." *Id.*

The Corps explains that it has not conducted the required analysis in this case "because plaintiffs are considered to be permanently attached to the Mat Sinking Unit, as opposed to being [on temporary duty assignment] during the mat sinking season." Def.'s Reply at 6. Nonetheless, defendant argues, "it is extremely unlikely that any such analysis would result in a substantial cost savings to the Government." *Id.* at 6. Defendant reasons that plaintiffs may eat three meals a day and sleep on the quarter boats accompanying the MSU at no cost to the employees during both work days and non-work days during the revetment season, and that plaintiffs have failed to offer any evidence or argument "to substantiate any potential 'substantial

cost savings.'" *Id.* Defendant observes that "[c]osts associated with room and board upon the quarter boats clearly would not approximate the expense of sending 300 employees home for the weekend and paying mileage costs." *Id.; see also* Def.'s Facts ¶ 37 (stating that employees who stay upon the MSU during their off days "still receive subsistence, *i.e.*, free room and free meals").

Under section 301–11.23(c) of the Federal Travel Regulation, the authorizing travel official "may authorize ... round-trip transportation expenses [to an employee's home]" if "justified incident to an extended [temporary duty] assignment." 41 C.F.R. § 301–11.23(c). Defendant argues that the regulatory language "implicitly, if not explicitly, gives the agency the discretion to approve a return trip home." Def.'s Reply at 6. Defendant acknowledges guidance in the Joint Travel Regulations concerning certain limited circumstances in which the exercise of agency discretion to approve such travel expenses would be appropriate. *Id.* at 6–7. Defendant asserts that the limited set of circumstances includes "injury or illness to an employee, a personal emergency, or, when travel funds exist (which necessarily requires the agency to conduct the cost analysis [addressed in the Joint Travel Regulations])," *id.*, and points to a decision of the General Services Administration Board of Contract Appeals noting, in reference to the Joint Travel Regulations, the existence of " 'limited situations in which a return to the employee's permanent duty station during a long-term [temporary duty] assignment would not be considered voluntary" ' and presumably should be paid for, *id.*[6]

Here, plaintiffs have not argued that there are special circumstances which would render the travel for which they seek reimbursement involuntary.

Defendant argues that when an employee elects to return home on a voluntary basis, "any entitlement to reimbursement for round-trip transportation and en route per

---

**6.** In the decision to which defendant refers, *Matter of Timothy P. Twigg*, 1999 WL 190435, GSBCA No. 14883–TRAV, 99–1 BCA (CCH) ¶ 30,795, 1999 GSBCA LEXIS 86, at *2 (Apr. 6, 1999), the board judge determined that an " 'incapacitating illness or injury' " or a " 'personal

emergency situation' " would be the type of "limited situation" for which an agency may pay for the return of an employee on temporary duty assignment to his or her official station. *See* Def.'s Reply at 7.

diem would be limited to the amount of per diem the Government would have paid had the employee remained at the [temporary duty assignment] location." Def.'s Reply at 7 (citing 41 C.F.R. § 301–11.24 and Def.'s Supp.App. at 2 (the Joint Travel Regulations)). Defendant contends that, in this case, the amount of per diem paid if an employee remained on the MSU during non-work days "would be 'zero' because the Government furnishes the meals and lodging at no cost to the employee and because there is no travel required of the employee by the Government." Def.'s Reply at 7.

Section 301–11.24 of the Federal Travel Regulation does limit the maximum reimbursement for voluntary travel returning home by an employee on a temporary duty assignment "to what would have been allowed had [the employee] remained at the [temporary duty] location," 41 C.F.R. § 301–11.24, and, in this case, plaintiffs do not dispute that they incur no personal living expenses during revetment season if they remain aboard the MSU. Accordingly, as a matter of law, plaintiffs are not entitled to reimbursement for their voluntarily incurred travel expenses to return home during their temporary duty assignment aboard the MSU during revetment season.

## III. Conclusion

For the foregoing reasons, defendant's motion to dismiss is DENIED. Defendant's motion for summary judgment is GRANTED. Plaintiffs' cross-motion for summary judgment is DENIED. The Clerk of the Court shall enter judgment for defendant. No costs.

IT IS SO ORDERED.